# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# COVINGTON DIVISION

| | |
|---|---|
| **JASON RAGLAND** : | |
| 1023 Kinmont Street : | Case No. _____ |
| Cincinnati, OH  45208 : | |
| : | Judge _____ |
| Plaintiff, : | |
| : | |
| vs. : | |
| : | **COMPLAINT WITH** |
| **BM2 FREIGHT SERVICES** : | **JURY DEMAND** |
| 1010 Windsor Drive : | |
| Cold Spring, KY  41076 : | |
| : | |
| : | |
| Defendant. : | |

Plaintiff, Jason Ragland, for his Complaint against Defendant, BM2 Freight Services, stating violations of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, *et seq.*, the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.*; and KRS Chapter 344, states as follows:

## PARTIES/JURISDICTION/VENUE

1. Plaintiff, Jason Ragland, currently resides at the address listed in the caption.

2. Defendant BM2 Freight Services is a Kentucky corporation whose principal place of business is located at the address listed in the caption.

3. Defendant is an "employer" as that term is defined under the employment-rights statutes asserted herein.

4. Defendant is subject to the personal jurisdiction of this Court.

5. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this judicial district. *See* 29 U.S.C. § 1391(b).

6. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331, as Plaintiff asserts statutory claims under federal law in this action.

## FACTS

7. Mr. Ragland was hired by Defendant in October 2012.

8. During his employment with Defendant, Mr. Ragland worked in a sales capacity and held the title of senior account executive.

9. At all times relevant hereto, Mr. Ragland was qualified for the position he held at Defendant.

10. Prior to his hire, Mr. Ragland served in the U.S. Marine Corps for five years during which time he was promoted to the rank of Sergeant. He received an honorable discharge in 2004. From early 2005 to mid-2008, he worked for the U.S. Department of State's Bureau of Diplomatic Security and served in Iraq.

11. Mr. Ragland was very successful during his tenure with Defendant. He attracted and retained significant clients for Defendant and, accordingly, generated substantial sales for the company.

12. Mr. Ragland's talents and contributions to Defendant were well-known by its management, including Scott Klever, the Vice-President of Development, who supervised Mr. Ragland. In a February 2016 letter of reference for Mr. Ragland, in support of his educational pursuits, Mr. Klever described Mr. Ragland as a "remarkable marketing talent" and a "natural leader," among other glowing compliments. (Copy attached herewith as "Exhibit A.") On or about April 26, 2016, Mr. Klever further

expressed his appreciation of Mr. Ragland's work in a personal, handwritten note, as follows:

> I would like to thank you for your commitment to BM2. You are a true leader and extremely vital to the success of the company. I have learned a lot from you and truly appreciate your professionalism.

(Copy attached herewith as "Exhibit B.")

13.  Despite his record of accomplishment and wonderful reputation at Defendant, on May 17, 2016, Mr. Ragland was abruptly terminated.

14.  Mr. Ragland had received no prior disciplines or warnings whatsoever.

15.  One of Defendant's owners, Kevin Ball, advised Mr. Ragland of the termination decision in a telephone call. When Mr. Ragland asked for an explanation, Mr. Ball cited Mr. Ragland's allegedly "publicly disrespecting" Mr. Klever the day before.

16.  This allegation was false. In a private conversation with Mr. Klever, on May 16, Mr. Ragland stated his objections about how management was distributing customer accounts to the sales team following the recent termination of one of Defendant's sales representatives. While Mr. Ragland expressed his frustration, he did not disrespect Mr. Klever nor was he insubordinate.

17.  Not only was the allegation of "disrespecting" a supervisor false, at least one other employee had frequently engaged in similar alleged misconduct at work, yet Defendant did not terminate him or, on information and belief, even discipline him.

18.  During his employment with Defendant Mr. Ragland had been subjected to negative stereotyping about combat veterans. He periodically had to field insulting questions from management and co-workers about his experience in Iraq such as, "Did you kill people?" and "Do you have PTSD [Post-Traumatic Stress Disorder]?" These

questions suggested a perception by Defendant that Mr. Ragland, as a combat veteran, was emotionally unstable and prone to volatile or violent outbursts.

19. Defendant acted on this negative stereotype when it terminated Mr. Ragland.

20. Mr. Ragland has timely commenced this action.

### FIRST CLAIM FOR RELIEF
**(Veteran Discrimination – 38 U.S.C. § 4311)**

21. Plaintiff incorporates the allegations set forth above as if fully restated herein.

22. Plaintiff was a member of and performed services in a uniformed service, as described in the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301, *et seq.*

23. Plaintiff's membership in a uniformed service was, at a minimum, a motivating factor in Defendant's decision to terminate Plaintiff's employment, in violation of USERRA, 38 U.S.C. § 4311.

24. Defendant's violation of Plaintiff's rights under USERRA was willful, in that Defendant knew that its conduct was prohibited by USERRA and/or acted in reckless disregard of the law.

25. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered damages for which he is entitled to recover against Defendant as set forth herein.

## SECOND CLAIM FOR RELIEF
### (Disability Discrimination)

26. Plaintiff incorporates the allegations set forth above as if fully restated herein.

27. Plaintiff timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission, and it subsequently issued him a right-to-sue letter on or about January 17, 2018.

28. Defendant perceived Mr. Ragland as having a mental impairment – specifically, PTSD – as defined under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101, *et seq*.

29. Defendant unlawfully terminated Plaintiff's employment because of his regarded-as-disability, in violation of the ADA and state law. *See* 42 U.S.C. § 12102(1)(c),(3); 42 U.S.C. § 12112(a); KRS Chapter 344.

30. Defendant acted with full knowledge of the provisions of the applicable law and/or in reckless and/or conscious disregard and indifference of the law, in depriving Plaintiff of his employment because of his perceived disability.

31. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered damages for which he is entitled to recover against Defendant as set forth herein.

WHEREFORE, Plaintiff demands judgment against Defendant, in an amount to be determined at trial, as follows:

  A. That Plaintiff be awarded all lost pay and benefits;

  B. That Plaintiff be awarded liquidated damages under USERRA;

C. That Plaintiff be awarded compensatory damages, including but not limited to damages for emotional distress resulting from the termination;

D. That Plaintiff be awarded punitive damages;

E. That Plaintiff be awarded pre- and post-judgment interest at the rate allowed by law;

F. That Plaintiff be awarded his attorney fees and costs incurred in the investigation and prosecution of this matter;

G. That Plaintiff be awarded such other and further relief which the Court deems just, proper and equitable under the circumstances.

Dated: February 12, 2018.

Respectfully submitted,

*/s/ Stephen A. Simon*

Stephen A. Simon (Bar No. 87264)
Tobias, Torchia & Simon
414 Walnut Street
Suite 321
Cincinnati, OH  45202
Tel:  (513) 241-8137
Fax:  (513) 241-7863
E-mail:  steves@tktlaw.com
Trial Attorney for Plaintiff

**JURY DEMAND**

Plaintiff requests a trial by jury on all issues triable to a jury.

*/s/ Stephen A. Simon*

Stephen A. Simon (87264)